# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES S. FRAZIER | CIVIL ACTION |
| VERSUS | NO: 08-4423 |
| SECRETARY, JANET NAPOLITANO, U.S. DEPARTMENT OF HOMELAND SECURITY | SECTION: "S" (3) |

## ORDER AND REASONS

The Motion for Summary Judgment (Doc. #7) filed by defendant, Janet Napolitano, U.S. Department of Homeland Security, is **GRANTED,** dismissing plaintiff's claims.

## BACKGROUND

Plaintiff held a civilian position, Lease Vehicle Manager, at the Integrated Support Command with the United States Coast Guard in New Orleans, Louisiana.[1] He was removed from his position, and is challenging the sustaining of the removal determination by the Merit Systems Protection Board (MSPB).

On March 21, 2005, plaintiff was involved in a domestic dispute in which his son was shot several times, resulting in his arrest and incarceration for attempted second-degree murder. Shortly

---

[1] This matter was transferred from the Western District of Pennsylvania, and plaintiff is proceeding *pro se*.

after his arrest, he attempted to contact his immediate supervisor, Robert G. Gargoney, Jr., to request assistance. He left a voice message informing Gargoney of his incarceration. On April 20, 2005, Lieutenant William Budobec, Gargoney's supervisor, recommended plaintiff's removal from his position on two grounds: conduct unbecoming a federal employee for the criminal charge of attempted second-degree murder, and being absent without leave (AWOL) from March 22, 2005, through April 20, 2005. On May 24, 2005, Captain Mark Hemann, the deciding official, approved plaintiff's removal based on the two grounds.

Plaintiff timely appealed the Coast Guard's action to the MSPB, challenging his removal on the two grounds, and alleging that his removal was the result of discriminatory retaliation or reprisal for prior Equal Employment Opportunity Commission (EEOC) protected activity. The administrative judge (AJ) dismissed the appeal without prejudice pending resolution of plaintiff's criminal charge.

On August 23, 2005, plaintiff was released from prison, after having been incarcerated for more than five months. On March 26, 2007, a jury found plaintiff not guilty by reason of self-defense of the criminal charge of attempted second-degree murder. Plaintiff was represented by counsel in the criminal proceedings.

On March 30, 2007, plaintiff refiled his appeal, and an administrative hearing was held on June 18, 2007. At the hearing, the AJ heard testimony from Gargoney, Budobec, Hemann and plaintiff; and admitted exhibits from plaintiff and the government. Plaintiff proceeded *pro se,* and conducted cross-examination of the government's witnesses.

Gargoney testified that after plaintiff's arrest, plaintiff left him a staticy voice message in

which plaintiff stated that he had been arrested. According to Gargoney, plaintiff did not ask for leave. Gargoney testified that on another day, plaintiff's mother called to ask if Gargoney would retrieve plaintiff's belongings from jail, and help with payment of plaintiff's rent, but that plaintiff's mother did not request leave on her son's behalf. Gargoney advised her that his chain of command had ordered him "to become nonparticipatory."[2] Gargoney testified that the agency's normal policy is that an employee was required to submit a leave request a day ahead, and that in emergencies, an employee can request leave after the leave was taken. Gargoney testified that he never received a leave request from plaintiff. Gargoney further testified that there was no one who could fill in for plaintiff at that time.[3]

Lieutenant Budobec, Garoney's supervisor, testified that he was responsible for approving annual leave of more than two or three days, or leave without pay requests. Budobec stated that he did not receive leave requests for plaintiff after he was incarcerated. Budobec testified that if plaintiff had requested leave for the duration of his incarceration, it would not have been granted. Budovec also stated that plaintiff's accrued leave would have been insufficient to cover the entire length of his incarceration. Budobec further stated that if plaintiff sought leave without pay, it would not have been granted because the leave request would have been for an extended period without a foreseeable end, and because plaintiff's duties were too critical to allow such a leave. Budobec

---

[2]According to a notarized affidavit from plaintiff's mother, she called Gargoney on April 1, 2005, and asked for Gargoney's help in securing bond and told Gargoney that her son was concerned about his absence. She attests that Gargoney called her later that day to inform that "he was told by his Boss not to get involved and that James could not come back to work even if he was freed because they had barred him from the base." The affidavit does not state that she requested leave on her son's behalf. *See* Doc. #13, Ex. 10, Affidavit from Ruby Frazier.

[3]*See* Doc. #7, Ex. A-6, Transcript of Administrative Proceedings of June 18, 2007, at 5 - 31.

3

stated that following plaintiff's incarceration, his unit had experienced difficulties because plaintiff's duties were not being performed.[4] Budobec stated that if plaintiff's attorney had requested leave for plaintiff, he "probably would have acted on such a request."[5] Budobec testified that he proposed plaintiff's removal from his position, and that in considering plaintiff's removal, he did not take into account plaintiff's having seen an Equal Employment Opportunity counselor in March 2005.[6]

Captain Hemann, Budobec's supervisor and second in command for the Integrated Support Command in New Orleans, received Budobec's recommendation that plaintiff be removed from his position. Hemann testified that it was his job to determine whether the penalty of removal was appropriate. Hemann testified that he was told that plaintiff had not requested leave after his incarceration, and that "the AWOL in and of itself was sufficient grounds for removal." Hemann testified that he considered that plaintiff held a key position within the unit, and the adverse effect

---

[4] Budobec testified that among plaintiff's duties was the oversight of the use of government vehicles in the lower Eighth District, and the determination of which individuals who would be trained and issued government licenses to drive government trailers. For example, plaintiff was to determine the qualifications of drivers for a tractor trailer to tow a bulldozer which impacted commercial shipping in the Mississippi River area. According to Budovec, these duties were left undone for awhile after plaintiff's incarceration.

[5] Plaintiff attaches a letter from his criminal defense attorney, addressed to "To Whom It May Concern" and dated September 14, 2007, which states *in toto*:

> Mr. James Frazier was a client of our law firm. During the time we handled his case I accepted paper work from the US Coast Guard, because Mr. Frazier was incarcerated. At no time, to the best of my recollection, did anyone from the US Coast Guard discuss the contents of the paperwork or allude to the fact that Mr. Frazier had a time frame in which he could file for a leave of absence from the Coast Guard while awaiting the outcome of his Trial. Mr. Frazier was acquitted of all charges by a Jury of his peers.

*See* Doc. #13, Ex. 9, Letter from Joan H. Blessing, Esq., September 14, 2007.

[6] *See* Doc. #7, Ex. A-6, Transcript of Administrative Proceedings of June 18, 2007, at 32 to 75. *See also* Doc. #13, Ex. 11, Individual Complaint of Employment Discrimination, dated March 15, 2005. On the form completed by plaintiff, plaintiff alleges hostile work environment, discrimination based on race and sex and retaliation.

4

plaintiff's AWOL had on the efficiency of the unit. Hemann also considered plaintiff's past disciplinary record, which included two 60-day suspensions.[7] In Hemann's opinion, these violations were "very significant." Hemann also considered a letter of caution after the last suspension relative to continuing threatening behavior. Hemann factored in plaintiff's long periods of good service in the 23 years with the government, the seriousness of the charge, and plaintiff's familiarity with leave policy. Hemann said that his unit used a progressive form of discipline, and that for AWOL violations, the penalty ranged from reprimand to suspension or removal. According to the agency's table of penalties, removal is an appropriate penalty for an AWOL offense in excess of 20 days. Hemann did not think that plaintiff could be rehabilitated. Hemann testified that he was aware of plaintiff's EEOC complaint, but he had forgotten about it at the time he approved the removal decision. Hemann stated that if plaintiff had requested leave without pay, he would have recommended that the request not be approved because at that time the unit was particularly busy with swapping new and old vehicles, which normally occurs in March and April of each year, and which was an essential part of plaintiff's duties.[8]

Plaintiff testified that he told Gargoney in his voice message that he needed to talk to Lori Matherne, the Human Resources Specialist for the Coast Guard, to determine what kind of leave he could use to cover his absences. Plaintiff said that he understood that his annual and sick leave could not be used. Plaintiff said that he was precluded from calling the unit again because he could only

---

[7]One suspension in February 2004 was for failing to yield, which resulted in a "mishap with a government vehicle." Another suspension in October 2004 was for threatening behavior.

[8]*See* Doc. #7, Ex. A-6, Transcript of Administrative Proceedings of June 18, 2007, at 76 to 107.

5

call "collect" from the prison where he was incarcerated, and federal agencies do not accept collect calls. Plaintiff alleged that he was not guilty of AWOL because he was not absent willfully or intentionally, but was incarcerated involuntarily. Plaintiff stated that he did what the regulations required him to do in an emergency, and that was to contact his supervisor. Plaintiff said that no one from the Coast Guard visited him in jail.[9]

After the hearing, on July 26, 2007, the AJ found that the agency failed to prove that plaintiff engaged in conduct unbecoming of a federal employee, but sustained the agency's charge of AWOL, concluding that the plaintiff was absent without authorization from March 22, 2005, through April 20, 2005, and that plaintiff did not request leave for this period. The AJ determined that considering the circumstances, the penalty of removal for the AWOL violation was warranted. The AJ observed that plaintiff failed to offer any evidence as to his claim of reprisal, and failed to show the requisite nexus between his removal and his prior protected activity. On September 25, 2007, the AJ's decision was made final, and was adopted by the MSPB as its final decision.

On January 18, 2008, plaintiff appealed to the EEOC, seeking review of the final order of the MSPB that his removal was not the result of reprisal for his prior protected EEOC activity. On February 22, 2008, the EEOC concurred with the final decision of the MSPB, finding no discriminatory reprisal.

Plaintiff appeals to this court the MSPB decision to uphold the removal on two grounds: that the MSPB was arbitrary and capricious when it upheld the finding of AWOL; and that the MSPB

---

[9]See Doc. #7, Ex. A-6, Transcript of Administrative Proceedings of June 18, 2007, at 108-19.

erred in not finding that he was a victim of reprisal or retaliation for his prior EEOC complaints. Plaintiff also raises two new claims that he did not exhaust administratively - that he was constructively discharged, and that he was a victim of race and sex discrimination. Plaintiff seeks reinstatement to his former position.

## ANALYSIS

**1. Legal Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."[10] If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[11]

The MSPB is an independent, quasi-judicial federal agency that is responsible for adjudicating appeals by federal employees from adverse personnel actions.[12] Although the district courts generally do not have jurisdiction to review final decisions of the MSPB, it has jurisdiction where an aggrieved employee asserts "mixed claims," meaning that the employee is asserting violations of federal discrimination statutes and claims on other grounds.[13]

---

[10] *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. Proc. 56(c).

[11] *Celeotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[12] *Gilbreath v. Guadalupe Hosp. Found., Inc.,* 5 F.3d 785, 787 (5th Cir. 1992)(*citing* 5 USC §§1204(a), 7513(d) and 7701)).

[13] *Aldrup,* 274 F.3d at 285. *See Blake v. Dep't of Air Force*, 794 F.2d 170, 173 n. 1 (5th Cir. 1986)*(citing Williams v. Dep't of Army*, 715 F.2d 1485 n. 3 (Fed. Cir. 1983)). "Typically, appeals of MSPB decisions are heard by the Federal Circuit. *See* 5 USC §7703(b)(1). However, if the MSPB addressed claims of discrimination, the challenge

This court reviews non-discrimination claims presented to the MSPB based on the administrative record, and "'will uphold the MSPB's determinations unless they are clearly arbitrary and capricious, unsupported by substantial evidence or otherwise not in accordance with law.'"[14] The MSPB's determination of discrimination claims is considered *de novo*.[15] Further, agencies are given wide discretion in disciplining their employees.[16]

Because Frazier is proceeding *pro se*, the court must construe his pleadings liberally.[17] However, "[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law.[18] "[A] pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to fact material to his case in order to avert summary judgment."[19]

**2. Appeal of the MSPB Decision**

Plaintiff's appeal of the MSPB decision is a "mixed appeal" in that plaintiff raised a non-discrimination claim, the AWOL challenge; and the discrimination claim, the reprisal or retaliation for his prior EEOC activity. This court will review of the MSPB's AWOL determination "on the

---

to the MSPB decision may - after following the correct procedures and exhausting the claims - be filed in federal district court. See §7703(b)(2); 42 USC §2000e-16." *Williams*, 533 F.3d at 372 n. 12.

[14]*Williams v. Wynne*, 533 F.3d 360, 373 (5th Cir. 2008)(*quoting Aldrup v. Caldera*, 274 F.3d 282, 287 (5th Cir. 2001)); *see also* 5 U.S.C. §7703(c)(1-3).

[15]*Aldrup,* 274 F.3d at 287 and *see* 5 USC §7703(c).

[16]*Aldrup*, 274 F.3d at 289.

[17]*Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995).

[18]*Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981).

[19]*Brown v. Crawford*, 906 F2d 667, 670 (11th Cir. 1990), *cert. denied*, 500 U.S. 933 (1991).

administrative record,"[20] and the MSPB's determination of retaliation claim *de novo*.[21]

   *a. AWOL Determination by the MSPB*

Plaintiff contends that AWOL status should not have applied to him because he was unable to go to work due to his involuntary incarceration for a charge for which he was ultimately found not guilty. The agency contends that the AWOL status is warranted because plaintiff did not seek authorization for his absences. The MSPB states that to prove that Frazier was AWOL on the dates in question, the agency must show that Frazier was absent and that the absences were not authorized or that a request for leave was properly denied.

In reviewing the merits of the agency's decision, the court will not disturb its findings if supported by substantial evidence based on the record as a whole."[22] Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[23] The reviewing court "may not reweigh the evidence or substitute its own judgment for that of the Board even if [it] finds that the evidence preponderates against the Board's decision."[24] An administrative judge's credibility determinations "are virtually unreviewable."[25]

---

[20] *Aldrup,* 274 F.3d at 287.

[21] *Aldrup,* 274 F.3d at 285-86 and 5 USC §7703(c).

[22] *Byrd v. Campbell*, 591 F.2d 326, 329 (5th Cir. 1979).

[23] *Coastal Production Serv. Inc. V. Hudson,* 555 F.3d 426, 430 (5th Cir. 2009).

[24] *Bonet v. United States Postal Serv.*, 712 F.2d 213, 216 (5th Cir. 1983).

[25] *See e.g., Bieber v. Dep't of Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002).

"To support a charge of AWOL, the agency must show both that the [employee] was absent and that either the absence was not authorized or that a request for leave was properly denied."[26] "It is well settled that employees are not entitled to [leave without pay] as a matter of right. It is also well settled that an agency is not required to grant an employee [leave without pay] to cover an absence due to his arrest and incarceration."[27] "A good prior performance record ... does not preclude a removal action for AWOL."[28]

There is no dispute that plaintiff was absent from work from the time he was incarcerated until his removal; i.e., from March 22, 2005 through April 20, 2005. The agency is also required to prove that plaintiff's absence was not authorized or that a request for leave was properly denied. In making her decision, the AJ considered the testimony of plaintiff's immediate supervisor Gargoney; Gargoney's supervisor, Budobec; and Hemann, the deciding official - all of whom testified that plaintiff did not request leave and that his absences were without leave. Gargoney acknowledged that plaintiff left him a voice message on March 22, 2005, but that to his knowledge, the message did not include a request for leave, although he admitted that static made it difficult to understand the message. Gargoney also stated that he spoke with plaintiff's mother in April of 2005, and that his mother did not request authorization for plaintiff. The AJ considered Gargoney's testimony and

---

[26]*Cooke v. U.S. Postal Service*, 67 M.S.P.R. 401, 404 (MSPB 1995)(citation omitted).

[27]*Benally v. Dep't of Interior*, 71 MSPR 537, 541 n. 4 (MSPB 1996). *See also Hawkins v. Dep't of the Navy*, 49 MSPR 501 (MSPB 1991)(removal reasonable after AWOL violation of 16 consecutive days caused by incarceration) and *Huettner v. Dep't of the Navy*, 54 MSPR 472 (MSPB 1992)(removal reasonable after AWOL violation for over 14 days caused by incarceration).

[28]*Hawkins,* 49 MSPR at 507.

plaintiff's testimony that his voice message to Gargoney included a question as to how to reach another employee regarding leave. The AJ weighed the evidence in the agency's favor in finding that plaintiff had not requested leave.

This court cannot reweigh evidence and "must uphold the [MSPB's] determinations unless they are clearly arbitrary and capricious, unsupported by the substantial evidence or otherwise not in accordance with law."[29] Plaintiff has not provided evidence that the MSPB's determination that plaintiff was AWOL is arbitrary and capricious, or is unsupported by substantial evidence, or not in accordance with law. Plaintiff has not demonstrated the existence of a question of material fact which would preclude summary judgment. The administrative record contains substantial evidence that plaintiff was absent from his job AWOL from March 22, 2005, through April 20, 2005, and that plaintiff did not request leave. The court further notes that affidavit of plaintiff's mother does not state that she requested leave on her son's behalf, and that the letter from plaintiff's criminal defense attorney does not state that the attorney asked for leave on his client's behalf. Plaintiff argues that an AWOL determination does not apply to him because he was involuntarily incarcerated. However, plaintiff's incarceration, though involuntary, does not preclude an AWOL determination.[30]

The MSPB's finding that plaintiff was AWOL from March 21, 2005, through April 20, 2005, is affirmed.

---

[29] *Williams,* 533 F.3d at 373 (*quoting Aldrup,* 274 F.3d at 287); *see also* 5 U.S.C. §7703(c)(1-3).

[30] The AJ noted at the hearing that there is no intent required in an AWOL charge.

### b. Penalty of Removal

"[P]enalty determinations are 'judgment calls' within the discretion of the employing agency.[31] The MSPB will review an agency's penalty to ensure that it was reasonable under the circumstances.[32] "'It is well established that the determination of the proper disciplinary action to be taken to promote the efficiency of the service is a matter peculiarly and necessarily within the discretion of the agency.'"[33] The courts "will not interfere unless, in light of all the circumstances, the penalty is so severe or unreasonable as to constitute an abuse of discretion or the penalty violates a statute or regulation.[34] "Removal for absence without leave may be an appropriate remedy. An essential element of employment is to be on the job when one is expected to be there, and to permit employees to remain away from work without leave would seriously impede the function of an agency."[35] An agency may remove an employee "for such cause as will promote the efficiency of the service."[36]

In this case, plaintiff was AWOL for nearly one month before his removal. The AJ heard testimony from his supervisors that plaintiff occupied a position that was critical to the efficiency of his unit. The AJ's upholding of the penalty of removal, which was adopted by the MSPB as its

---

[31]*Lachance v. Devall*, 178 F.3d 1246, 1251 (Fed. Cir. 1999)(citations omitted).

[32]*See Douglas v. Veterans Administration*, 5 MSPR 280, 302 (MSPB 1981).

[33]*Parker v. U.S. Postal Serv.*, 819 F.2d 1113, 1116 (Fed. Cir. 1987).

[34]*Washington v. Dep't of Army*, 813 F.2d 390, 394(Fed. Cir. 1987), *cert. den.*, 484 U.S. 985 (1987).

[35]*Washington*, 813 F.3d at 394.

[36]*See* 5 USC §§7512(1) and 7513(a).

final decision, is entitled to this court's deference as it is not arbitrary and capricious, and is supported by substantial evidence and in accordance with law. The upholding of the removal is therefor affirmed.

### c. Discrimination in Retaliation Claim

In a mixed case appeal from the MSPB, the court considers discrimination claims *de novo*.[37] Section 704(a) of Title VII prohibits an employer from discriminating against any employee because the employee has made a charge under Title VII.[38] The court applies the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), evidentiary framework from Title VII cases to claims of retaliation.[39] To establish a *prima facie* case of Title VII retaliation, the plaintiff must show that 1) he engaged in an activity protected by Title VII; 2) he suffered an adverse employment action; and 3) a causal link existed between the protected activity and the adverse action.[40] A plaintiff must demonstrate that the adverse employment action would not have occurred "but for" plaintiff's protected activity.[41] A plaintiff who is unable to show a *prima facie* case cannot survive a summary judgment challenge as to the Title VII claims.[42]

"If the plaintiff makes a *prima facie* showing, the burden then shifts to the employer to

---

[37] *Aldrup,* 274 F.3d at 285-85 (*citing* 5 USC §7703(c)).

[38] 42 U.S.C. §2000e-3(a).

[39] *Aldrup,* 274 F.3d at 286.

[40] *Aryain v. Wal-Mart Stores Texas LP,* 534 F.3d 473, 484 (5th Cir. 2008).

[41] *Septimus v. University of Houston*, 399 F.3d 601, 608 (5th Cir. 2005)

[42] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 429 (5th Cir. 2000).

13

articulate a legitimate ... non-retaliatory reason for its employment action. If the employer meets this burden of production, the plaintiff then bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason."[43]

"The timing of the adverse employment action can be a significant, although not necessarily determinative, factor" to establish the requisite nexus.[44] However, "temporal proximity alone is insufficient to prove "but for" causation."[45]

It is undisputed that on March 15, 2005, weeks before plaintiff's incarceration, plaintiff filed a complaint of employment discrimination, alleging hostile work environment, discrimination based on race and sex, and retaliation; and that on April 20, 2005, plaintiff was removed from his position. Hence, two of the three plaintiff's *prima facie* requirements are undisputed. Plaintiff contends that the close timing of his March 15, 2005, EEOC complaint and his removal is proof of retaliation. Liberally construing plaintiff's argument, the court will apply it to the third element of plaintiff's *prima facie* case. "Close timing between an employee's protected activity and an adverse action against him may provide the causal connection required to make out a *prima facie* case of retaliation." The court finds that plaintiff has made a *prima facie* case of discriminatory retaliation.

Because plaintiff has made his *prima facie* case, defendant bears the burden of production to articulate a legitimate, nondiscriminatory reason for the adverse employment action taken against plaintiff. Defendant states that plaintiff's removal was due to his being AWOL from March 22,

---

[43]*Aryain,* 534 F.3d at 484.

[44]*Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995).

[45]*Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007).

14

2005, through April 20, 2005. Hemann testified that plaintiff's absences for more than 20 continuous workdays impaired the ability of the unit, and that plaintiff was the only employee who could fulfill plaintiff's duties at that time. The court finds that the defendant has stated a legitimate, nondiscriminatory reason for plaintiff's removal.

Because the defendant has articulated a legitimate reason for plaintiff's removal, plaintiff bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason.[46] This requires plaintiff to offer some evidence from which a jury may infer retaliation was defendant's real motive. This requires plaintiff to produce evidence that the adverse employment would not have occurred "but for" his protected activity.[47] Plaintiff has offered evidence of his prior EEOC activity, but has not offered evidence which shows "but for" his protected EEOC activity, the adverse employment action would not have occurred. Plaintiff's removal was caused by his AWOL status, and plaintiff has not produced evidence to refute this fact.

Reviewing the retaliation claim *de novo*, the court finds there is no question of material fact which would preclude summary judgment in defendant's favor, affirming the MSPB's final decision that plaintiff's removal was not the result of retaliation for the EEOC activity.

**3. Claims of Constructive Discharge and Discrimination based on Race and Sex**

Plaintiff raises in his complaint two Title VII claims that he did not exhaust administratively - that he was constructively discharged, and that he was a victim of race and sex discrimination.

A federal employee must exhaust his administrative remedies when bringing suit under Title

---

[46]*Aryain,* 534 F.3d at 484.

[47]*See Septimus*, 399 F.3d at 608.

VII in federal court.[48] The exhaustion requirement is not jurisdictional, and is subject to the traditional equitable defenses of waiver, estoppel, and equitable tolling.[49] "Equitable tolling is appropriate when, despite all due diligence, a plaintiff is unable to discover essential information bearing on the existence of his claim."[50]

The only discrimination claim raised by plaintiff to the MSPB from which this appeal is taken was his claim of retaliation for his prior EEOC activity.[51] Thus, plaintiff's claims of constructive discharge, and race and sex discrimination were not subject of the decision from which this appeal is taken.

Plaintiff has not exhausted his administrative remedies on his claims of constructive discharge, and race and sex discrimination. Further, plaintiff offers no evidence that equitable tolling is appropriate in this case. Plaintiff's claims of constructive discharge and race and sex discrimination are dismissed.

## CONCLUSION

The motion for summary judgment is **GRANTED**, dismissing all of plaintiff's claims against the defendant.

---

[48] *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832-33 (1976).

[49] *Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992).

[50] *Pacheco*, 966 F.2d at 906-07.

[51] See Doc. #7, Ex. A-4, Administrative form completed by plaintiff relative to appeal of agency decision.

New Orleans, Louisiana, this \_\_1st\_\_ day of June, 2009.

    **MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**